IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

Frederick S. Harris, #B-13832,
   Plaintiff,

v.

NICHOLAS MOLENERO, et al,
SUSAN PRENTICE, GUY D. PIERCE,
TRAVIS BAYLOR; JOHN BALDWIN,
ANDREW TILDEN, KRISTI ESHELMAN,
STEPHANIE SCHERTZ and
CORRECTIONAL OFFICERS WILSON and
MCCLANAHAN,
   Defendants

AMENDED COMPLAINT

No. 16-CV-1322-MMM

SCANNED at PCC and E-Mailed
1/6/17 (date) by [illegible] (initials)
52 (# of pages)

## PRELIMINARY STATEMENT

1. This is a civil rights action filed by Frederick S. Harris, a state prisoner, for damages under 42 U.S.C. §1983, alleging failure to protect and denial of adequate medical care in violation of the Eighth Amendment of the United States Constitution. Plaintiff also alleges the torts of negligence and medical malpractice.

## JURISDICTION & VENUE:

2. The Court has jurisdiction over Plaintiff's claims of violations of federal constitutional rights under 42 USC §1331(a) and 1343.

3. The Court has supplemental jurisdiction over Plaintiff's state law tort claims under 28 U.S.C. §1367.

4. The Central District is the appropriate venue under 28 USC §1391 (b)(2) because it is where the events in this lawsuit occurred

PARTIES

5. Plaintiff, Fredrick S. Harris was incarcerated at Pontiac Correctional Center ("Pontiac") during the events described in this complaint;

6. Defendant Nicholas Molonero is a correctional officer at Pontiac employed by the State of Illinois. He is sued in his individual capacity;

7. Defendants Wilson and Maclenahan are correctional officers at Pontiac whose first names are presently unknown to Plaintiff. They are sued in their individual capacities;

8. Defendant Susan Prentice is a Correctional Major who is the North Segregation Unit Supervisor at Pontiac. She is sued in her individual capacity;

9. Defendant Guy D. Pierce is the former Chief Administrative Officer/Warden at Pontiac. He is sued in his individual capacity;

10. Defendant Travis Baylor is a correctional counselor at Pontiac. He is sued in his individual capacity;

11. Defendant John Baldwin is the Director of the Illinois Department of Corrections ("IDOC") and is responsible for implementing and enforcing rules and regulations for the protection of the person and property of both staff and offenders of IDOC. He is sued in his individual and official capacities;

12. Defendant Andrew Tilden is the facility medical director at Pontiac. He is sued in his individual capacity;

13. Defendant Kristi Eshelman is a correctional medical technician at Pontiac. She is sued in her individual capacity;

2.

14. Defendant Stephanie Schertz is a registered nurse at Pontiac. She is sued in her individual capacity.

FACTS:

15. On November 22, 2015, Plaintiff was being housed on Seven (7) gallery in cell #735 in the North Segregation Unit at Pontiac with offender Jiki Bell, #M79689 who was on the same gallery in cell #737. That day offender Bell threatened to assault me, so I sent a message to the cellhouse counselor Travis Baylor informing him about Bell's threat to assault me and requesting intervention and protection.

16. The following day, November 23, 2015, Defendant Molenero (a correctional officer) came to my cell to escort me downstairs to have some legal documents notarized. At that time I told Molenero that offender Bell had threatened to "Blast me." Mr. Molenero responded by saying "sucks to be you." I then complied with Mr. Molenero's order to "cuff up" and allowed him to handcuff and shackle me because in the North Segregation Unit, all segregation prisoners must be handcuffed and shackled whenever we leave our cells.

17. After I complied with Mr. Molenero's order to "cuff-up," I was ordered by Molenero to walk several paces ahead of him so that if Bell "blasted me" Molenero wouldn't get hit too. Even though Mr. Molenero could have walked in front of me and could have "ordered" offender Bell to go to the back of his cell where he couldn't assault me, or Mr. Molenero could have escorted me out the back of the gallery to avoid going past Bell's cell all together.

---

[1] In Pontiac Segregation Unit offenders often assault guards and one another by throwing feces that is mixed with urine, soap, shaving cream and other substances. This is referred to as "Blasting" someone.

3.

18. Apparently Bell was not ready to "blast" me when I first went pass his cell, but as I was returning to my cell Molenero again ordered me to walk several paces in front of him and as I got in front of Bell's cell, that's when Bell "blasted" me with two (2) half pint milk cartons full of "liquified feces," which must have been mixed with some other chemicals, because when the substance got in my eyes, my eyes started "burning."

19. I told Molenero that my eyes were burning and I could not see. He then escorted me to a sink and allowed me to try to rinse my eyes out, but even after I tried to rinse my eyes out the burning continued. At that point medical personnel was called and I was allowed to take a shower, but the burning continued....

20. Subsequently, Defendant Eshelman came to the cell house to try to rinse my eyes out using a "squeeze bottle," however, Defendant Eshelman doesn't like me because I've sued her before and have filed several grievances against her so she was "deliberately" applying too much pressure trying to hurt me even more, so I asked her to stop and to send me to a doctor. I specifically told her that my eyes were still burning and my vision was blurry and that I wanted to see a doctor. She responded by saying "I already talked to Dr. Tilden, there's nothing they can do for this. It's too expensive to send you to the hospital to take care of this. You just have to suffer for a few days. You're not gonna die!"

21. When I woke up the next morning, my vision was still blurry and my eyes were sore and irritated. It also felt like something was stuck in my left eye. I attempted to give Defendant Shertz a P96 form and requested that she put me in to see the eye doctor as she did her med-pass. She responded by saying "You're a pathological

"No. Kristi' already rinsed your eyes out. There's nothing wrong with your eye."

22. I immediately filed a grievance and for the next several days I verbally asked every nurse and med-tech to put me in to see a doctor, including Defendant Eshelman. I also wrote to Dr. Tilden and requested to be seen. However, the nurses and med-techs all ignored my complaints of blurred vision and discomfort and Dr. Tilden never responded to my letters. I also wrote the "eye doctor" several letters.

23. I was not seen by the eye-doctor for more than (30) days after the assault on December 31, 2015. The eye doctor told me that he finally received my request. He didn't say which one. But when he examined my eyes, he discovered that the lens implant that was previously put in my left eye was dislocated, which was probably causing the blurred vision and discomfort. I eventually had surgery to replace the dislocated lens (see attached).

24. On November 24, 2015, the day following the assault, I asked Defendant Baylor (in a letter) if he could return to me a copy of the letter I had sent him informing him about Bell's threat to assault me. He acknowledged that he'd received my note about the threat, but said he did not keep it. He said he "forwarded it on." When I later asked him face-to-face what he meant by that, he stated he passed the message on to "security," which includes Guy D. Pierce [Chief Administrative Officer], Susan Prentice [North Segregation Unit Supervisor], Correctional Officers Addison and Weltmacher as well as others. He acknowledged that he failed to follow up on it.

25. Additionally, prior to assaulting me, Offender Bell had previously assaulted several other prisoners by throwing feces and other substances while housed in the North

5

segregation Unit at Pontiac Corr. Ctr. In fact, these types of assaults occur quite "frequently" in Pontiac segregation units - especially in the North Segregation Unit.

26. Not only did defendants Baldwin, Pierce, Baylor, Prentice, Wilson and Hartenahan all have personal knowledge of offender Bell's history and propensity to assault other prisoners with feces in the North Segregation Unit (where Plaintiff was being housed), but these defendants all had personal knowledge from their positions at Pontiac and within the Illinois Department of Corrections and/or access to information about the residents at Pontiac including Bell that Plaintiff was at a substantial risk of being assaulted with feces; yet they took no steps, embraced no policies, set no rules and did nothing to neutralize the threat. Even though they knew about the threat to Plaintiff, not only from Bell's history, but also from the high volume of these types of assaults at Pontiac Segregation units where Plaintiff was being housed.

27. Plaintiff believes from the information he obtained that each defendant had personal knowledge and knew before hand that I was at a substantial risk of being assaulted with feces while housed at Pontiac Corr. Ctr. North Segregation Unit and that these Defendants: Baldwin, Pierce, Baylor, Prentice, Wilson and McClanahan were deliberately indifferent to the risk.

LEGAL CLAIMS:

28. Defendants McClanahan, Wilson, McClanahan, Prentice, Pierce, Baylor and Baldwin each displayed deliberate indifference and reckless disregard for Plaintiff's safety by failing to take any action to prevent the assault in violation of Plaintiff's Eighth Amendment rights.

28. Defendants Tilden, Eshelman, and Schrock all displayed deliberate indifference to Plaintiff's serious medical need, refusing to provide Plaintiff medical treatment for Plaintiff's

complaints of pain, discomfort and the plaintiff's blurred vision resulting from the assault.

PRAYER FOR RELIEF.

29. WHEREFORE, Plaintiff, Frederick S. Harris respectfully prays that this honorable Court enter judgement, granting plaintiff:

a). Compensatory damages as follows:

  i. $25,000. jointly and severally against Defendants Molenero and Baylor for failure to protect Plaintiff from Bell's assault even after plaintiff had warned them about Bell's threat.

  ii. $10,000. jointly and severally against Defendants Wilson, Maclenahan, Prentice, Pierce and Baldwin, for failing to take reasonable steps to eliminate the substantial risk to Plaintiff's safety.

  iii. $100,000. jointly and severally against Defendants Tilden, Eschlman and Schertz for failing to provide adequate medical care after the assault.

b). Punitive damages as follows:

  i. $50,000. each against Defendants Molenero and Baylor.

  ii. $10,000. each against Defendants Wilson, Maclenahan, Prentice, Pierce and Baldwin;

  iii. $50,000 each against Defendants Tilden, Eschleman and Schertz.

IV. Plaintiff's costs in this suit

V. Any additional relief the Court deems just, reasonable equitable.

DATE: January 5, 2017

Respectfully submitted

Frederick S. Harris
Frederick S. Harris #B-13872
Pontiac Correctional Center
P.O. Box 99
Pontiac, Illinois. 61764-0099

### VERIFICATION

I have read the forgoing complaint and hereby verify that the matters alleged therein are true, except as to matters alleged on information and belief, and as to those, I believe them to be true. I certify under penalty of perjury that the forgoing is true and correct.

Executed at Pontiac, Illinois on January 5, 2017

8.